1   ROBERT L. MEZZETTI II (SBN 114282)
    Rob@mezzettilaw.com
2   MAUREEN PETTIBONE RYAN (SBN 245438)
    Maureen@mezzettilaw.com
3   CHRISTOPHER R. MEZZETTI (SBN 282287)
    Chris@mezzettilaw.com
4   MEZZETTI LAW FIRM, INC.
5   31 East Julian Street
    San Jose, California 95112
6   Telephone (408) 279-8400
    Facsimile (408) 279-8448
7

8

9   Attorneys for Plaintiff
    Colonel David Randolph Scott (Ret.)
10

11                      UNITED STATES DISTRICT COURT

12                     NORTHERN DISTRICT OF CALIFORNIA

13                            SAN JOSE DIVISION

14

15                                         )
    COLONEL DAVID RANDOLPH SCOTT,          )
16                                         )   Case Number: 17-CV-00436-NC
         Plaintiff,                        )
17                                         )   PLAINTIFF'S OPPOSITION TO BULOVA'S
    v.                                     )   MOTION FOR SUMMARY JUDGMENT
18                                         )   PURSUANT TO FED. R. CIV. P. 56(a)
    CITIZEN WATCH COMPANY OF               )
19  AMERICA, INC., a California Corporation )
    (successor to BULOVA CORPORATION, a    )   Date:  February 7, 2017
20  New York corporation); STERLING        )   Time:  1:00 p.m.
    JEWELERS, INC. dba KAY JEWELERS, a     )   Courtroom:  7
21  Delaware corporation; and DOES 1 through )  Judge:  Hon. Nathanael Cousins
    99, inclusive,                         )
22                                         )
                                           )   Complaint Filed:  January 27, 2017
23       Defendants.                       )
                                           )
24  _____  )

25

26

27

28

# TABLE OF CONTENTS

TABLE OF AUTHORITIES……………………………………….…...…….…..iii

I. Introduction………………………………………………………….................1

II. Statement of Issues Pursuant to Local Rule 7-4…………………………………..…1

III. Facts……………………………………………………………………................1

    A. Plaintiff's Career as an Astronaut and Public Figure……………………………..1

    B. Plaintiff Auctions a Bulova Watch that he wore on the Moon……………….............2

    C. Defendants' Unauthorized Use of Plaintiff's Name, Identity, Voice and Likeness…3

IV. Argument……………………………………………….......……………………4

    A. Legal Standard……………………………………………………………..…5

    B. Plaintiff has Established a Genuine Factual Dispute Regarding his Eight

    Pending Causes of Action………………………………………………...5

        1. Plaintiff's First and Second Causes of Action are not Duplicative…………..5

        2. Defendants Have Violated Plaintiff's Common Law Publicity and

        Privacy Rights……………………………………………………..6

            a. Bulova's Use of Col. Scott's Identity was Not "Incidental"…………6

            b. Bulova's "Speech" is Not Constitutionally Protected……..............11

            c. Bulova's Use of Col. Scott's Identity was Not in the Public

            Interest………………………………………………………13

            d. Bulova;s Use of Col. Scott's Identity was Not Transformative……..16

        3. Defendants Have Violated Plaintiff's Section 3344 Publicity Rights………..19

            a. The Public Affairs Exception Does Not Apply to Defendants………..19

            b. Plaintiff is Readily Identifiable in the Marketing Material…………20

        4. Defendants Have Violated Plaintiff's Lanham Act Rights…………………21

            a. Bulova's Use was Not a Nominative Fair Use………………………22

            b. Bulova's Conduct is Likely to Cause Confusion……………………23

            c. Bulova Made False Statements…………………………………...23

d. Bulova Use of Col. Scott's Name Violates Lanham Act……………24

5. Plaintiff's Negligence and Emotional Distress Claims are Supported
by Evidence…………………………………………………………………24

V. Conclusion……………………………………………….……………………25

Certification……………………………………………….……………………...25

## TABLE OF AUTHORITIES

## <u>FEDERAL CASES</u>

*Abdul-Jabbar v. GMC*
   85 F. 3d 407 (9th Cir. 1996)…………………………………………………5, 20, 22, 23

*Aldrin v. Topps Co.*
   2011 U.S. Dist. LEXIS 110800 at*7 (C.D. Cal. Sept. 27, 2011)……………………………..16

*Ali v. Playgirl, Inc.*
   447 F. Supp. 723 (S.D.N.Y. 1978)……………………………………………………..10

*Allen v. National Video Inc.*
   610 F. Supp. 612 (S.D.N.Y. 1985)……………………………………………………..24

*Cardtoons, L.C. v. Major League Baseball Players Ass'n*
   838 F. Supp. 1501 (N.D. Okla. 1993)……………………………………………..8, 11

*Davis v. Elec. Arts, Inc.*
   775 F.3d 1172 (9th Cir. Cal. 2015)……………………………………………………..14

*Downing v. Abercrombie & Fitch*
   265 F.3d 994 (9th Cir. 2001)………………………………………………………10, 20

*Eisenberg v. Ins. Co. of N. Am.*
   815 F.2d 1285 (9th Cir. 1987)…………………………………………...…………...5

*Estate of Fuller v. Maxfield & Oberton Holdings, LLC*
   906 F. Supp. 2d 997 (N.D. Cal. 2012)……………………………………………………..16

*Fraley v. Facebook, Inc.*
   830 F. Supp. 2d 785 (N.D. Cal.2011)……………………………………………………..19

*Henley v. Dillard Department Stores*
   46 F. Supp. 2d 587 (N.D. Tex. 1999)………………………………………………………7

*Hilton v. Hallmark Cards*
   599 F.3d 894 (9th Cir. 2010)………………………………………………………15, 18

*In re NCAA Student-Athlete Name & Likeness Licensing Litig.*
   37 F. Supp. 3d 1126 (N.D. Cal. 2014)……………………………………………………..5

*Keller v. Elec. Arts Inc.* (In re NCAA Student-Athlete Name & Likeness Licensing Litig.)
   724 F.3d 1268 (9th Cir. Cal. 2013)…………………………………………...13-14, 18

*Maloney v. T3Media, Inc.*
   853 F.3d 1004 (9th Cir. 2017)………………………………………………………...7

*Merle v. Sociological Research Film Corp.*
   166 A.D. 376, 152 N.Y.S. 829 (1 Dept. 1915)……………………………………………..7

*Motschenbacher v. R.J. Reynolds Tobacco Co.*
   498 F.2d 821 (9th Cir. 1974)…………………………………………………………...10

*Newcombe v. Adolf Coors Company*
   157 F.3d 686 (9th Cir. 1998)…………………………………………………………...20

*Pooley v. National Hole-in-One Ass'n*
   89 F. Supp. 2d 1108 (D. Ariz. 2000)…………………………………………...7, 10

*Sinatra v. Nat'l Enquirer, Inc.*
   854 F.2d 1191 (9th Cir. 1988)…………………………………………………………...6

*Waits v. Frito Lay*
   978 F.2d 1093 (9th Cir. 1992)…………………………………………………………...24

*Wendt v. Host Int'l, Inc.*
   125 F.3d 806 (9th Cir. 1997)…………………………………………………………...5

*White v. Samsung Elec. Am., Inc.*
   971 F.2d 1395 (9th Cir. 1992)…………………………………………………………...23

*Wong v. Golden State Auction Gallery, Inc.*
   2016 U.S. Dist. LEXIS 27377 (N.D. Cal. Mar. 3, 2016)………………………………..8

*Yeager v. Cingular Wireless LLC*
   627 F. Supp. 2d 1170 (E.D. Cal. 2008)…………………………………………..6, 10, 13

*Yeager v. Cingular Wireless LLC*
   673 F. Supp. 2d 1089 (E.D. Cal. 2009)…………………………………………..7, 11

*Zacchini v. Scripps-Howard Broad. Co.*
   43 U.S. 562 (US 1977)…………………………………………………………...14

## STATE CASES

*Comedy III Productions, Inc. v. Gary Saderup, Inc.*
   25 Cal. 4th 387 (Cal. 2001)…………………………………………………………...12

*Eastwood v. Superior Court*
   149 Cal. App. 3d 409 (Cal. Ct. App. 1983)…………………………………………..6

*Gionfriddo v. Major League Baseball*
   94 Cal. App. 4th 400 (2001)…………………………………………………………...15

*Guglielmi v. Spelling-Goldberg Productions*
    25 Cal. 3d 860 (Cal. 1979)………………………………………………………...18

*Kirby v. Sega of Am., Inc.*
    144 Cal. App. 4th 47 (Cal. Ct. App. 2006)………………………………………15, 18

*Maxwell v. Dolezal*
    231 Cal. App. 4th 93 (Cal. Ct. App. 2014)………………………………………….6

*Montana v. San Joe, Mercury News, Inc.*
    34 Cal. App. 4th 790 (1995)………………………………………………………16


## FEDERAL CODES

15 U.S.C. 1125(a)(1)………………………………………………………………...21

15 U.S.C. 1125(a)(a)(A)……………………………………………………………...21

15 U.S.C. 1125(a)(1)(B)……………………………………………………………...21

Federal Rule of Civil Procedure 56(a)………………………………………………..5


## STATE CODES

California Civil Code Section 3344…………………………………………………..19

California Civil Code Section 3344(a)………………………………………………...19

California Civil Code Section 3344(d)………………………………………………...19


## OTHER AUTHORITIES

CACI No. 400………………………………………………………...…...…25

CACI No. 1620………………………………………………………………...25

Local Rule 5-1(i)(3)…………………………………………………………...…25

Colonel David Randolph Scott ("Plaintiff" or "Col. Scott"), submits the following Opposition to Citizen Watch Company of America, Inc. (f/k/a "Bulova") Motion for Summary Judgment, joined by Defendant Sterling Jewelers, Inc., d/b/a Kay Jewelers ("Kay Jewelers"):

## I.   INTRODUCTION

Bulova's motion for summary judgment misconstrues the law and glosses over the true factual disputes between the parties.  The dispute pertains to two watches:  Col. Scott's Bulova watch that he wore to the moon ("Col. Scott Moon Watch") and a watch Bulova describes as an "authentic replica" of Col. Scott's Moon Watch (the "Bulova 'replica' ").

The legal and factual disputes are clear.  Col. Scott contends that Bulova *unlawfully* used his name, identity, likeness, and his voice in order to promote the Bulova "replica" and their brand and falsely advertised the watch by associating it with his name, referring to it as a "moon watch," and stating that it "authentically replicates" Col. Scott's Moon Watch. Bulova's conduct has caused Col. Scott, a national hero who has not commercialized his name and likeness, to suffer from embarrassment and humiliation.  Col. Scott has presented sufficient evidence of Bulova's misdeeds to bring all of his pending claims before a jury.

## II.   STATEMENT OF ISSUES PURSUANT TO LOCAL RULE 7-4

1.   Whether Plaintiff established a genuine dispute of fact regarding his legal claims.

## III.   FACTS

### A.  Plaintiff's Career as an Astronaut and Public Figure

Colonel David Randolph Scott is the seventh man to walk on the moon.  He graduated fifth in his West Point class, and was commissioned as an officer in the United States Air Force.  Col. Scott became a fighter pilot, a test pilot, and an astronaut, displaying great aptitude and talent.  Col. Scott was a pilot for Gemini 8, the Command Module Pilot for Apollo 9, and the Mission Commander for Apollo 15.  On Gemini 8, he served as co-pilot for Neil Armstrong, the first man to walk on the moon.  Due to a thruster malfunction, Neil Armstrong and Col. Scott nearly perished—it was only their excellent piloting skills that saved their lives and the mission.  (Declaration of Col. Scott, "Scott Dec." at ¶¶1-4.)

During the moon landing, Col. Scott spent more than eighteen hours over three separate "extravehicular activities" missions (or EVAs), during which time he was the first man to drive the lunar rover, collected samples, and performed experiments.  (Scott Dec. at ¶4.)

In his last moments on the moon, Col. Scott famously proved one of Galileo Galilei's theories, that a hammer and a feather dropped in zero gravity would fall at the same rate.  At the height of the Cold War, Col. Scott also placed the "fallen astronaut" statue on the moon, a tribute to both the cosmonauts and astronauts who died during the space race, and a rare display of unity between the U.S. and the U.S.S.R.  (Scott Dec. at ¶4.)

Following the moon landing, Col. Scott served for an additional four years in the Air Force, as part of the Apollo-Soyuz project.  In 1975, he retired from the United States Air Force as a Colonel, but continued working for NASA as the civilian director of the Dryden Flight Research Center at Edwards Air Force Base until late 1977.  (Scott Dec. at ¶5.)

After retiring from NASA, Col. Scott continued his life as a dedicated public servant. He has refused to accept remuneration for the many public engagements he still attends at the age of eighty-five.  Col. Scott gives an annual lecture at his alma mater, MIT, and teaches a course as a visiting professor at Brown University, refusing salary, travel expenses, or room and board.  Col. Scott also attends space-themed events.  (Scott Dec. at ¶5.)

**B. Plaintiff Auctions a Bulova Watch that he wore on the Moon**

On October 22, 2015, Col. Scott auctioned off the Col. Scott Moon Watch for $1.625 million dollars.  Prior to the publicity surrounding the auction, Bulova was unaware that it had provided Col. Scott with a watch that he wore on the moon.  (Declaration of Maureen Pettibone Ryan, "Ryan Dec.," at ¶3, Ex. A.)  After learning of the watch, Bulova began its efforts to profit from Col. Scott's reputation and fame without his knowledge or consent.

First, Bulova asked Col. Scott to loan them the Col. Scott Moon Watch, so that they could wind and inspect it, and display it at Baselworld 2015, the preeminent trade show for watch companies and enthusiasts.  At that time, and unbeknownst to Col. Scott, Bulova was planning a "replica" of the Col. Scott Moon Watch.  (Scott Dec. at ¶8.)  However, this

"replica" was based only on photos of the Col. Scott Moon Watch, as Bulova had no records regarding the original watch that it gifted to Col. Scott.  (Ryan Dec. at ¶4, Ex. B.)

Second, Bulova wanted Col. Scott to speak with the press, ostensibly to promote the auctioning of the Col. Scott Moon Watch, but in reality so that Bulova could promote the Bulova "replica," which was made with a quartz movement instead of the costly and precise Swiss movement for the Col. Scott Moon Watch, and which was not suitable for use in space. (Ryan Dec. at ¶¶6-7, Exs. D-E, A at 74:19-75:13; 82:9-18.)

Due to Bulova's inability to provide adequate insurance for the Col. Scott Moon Watch, its demands to wind and test the watch, its failure to provide reasonable security, and the increasingly complex contract it proposed, none of Bulova's plans to use the Col. Scott Moon Watch to publicize the Bulova "replica" came to pass.  (Scott Dec. at ¶8.)

**C. Defendants' Unauthorized Use of Plaintiff's Name, Identity, Voice, and Likeness.**

After Bulova's failure to obtain Col. Scott, as a spokesperson, Bulova deliberately misappropriated Col. Scott's name, identity, voice, and likeness, as did its downstream retailers, both of their own accord and as instructed by Bulova.  (Declaration of Larry Londre "Londre Dec., Ex. A; Ryan Dec. at ¶¶ 3, 8-11, Ex. A, F-X.)  This use was of the sort that requires a licensing agreement.  (Declaration of Doug Bania, "Bania Dec.")

**Name.**  Bulova featured Col. Scott's name in a press release, copy listing the Bulova "replica" for sale on its downstream retailers' websites, in copy that they provided to salespeople for third-party retailers, in interviews with the press, and in its own revisions to its Wikipedia page.  (Ryan Dec. at ¶8, Exs. F-L, A at 109:18-111:12.)

**Identity.**  Bulova also referred to Col. Scott by title—as "Mission Commander of Apollo 15."  Col. Scott is the only person who held that title.  These references are found in copy listing the Bulova "replica" for sale on its website and third-party retailers' websites, in advertisements, on training cards and as part of the "Pitchbook App" that Bulova used to train salespeople, and in the booklet that is both included with the Bulova "replica" and prominently displayed by retailers at Bulova's request, and on the certificate of authenticity included with the Bulova "replica."  (Ryan Dec. at ¶9, Exs. M-S.)

**Voice.**  Bulova used a recording of Col. Scott's voice as part of a video commercial for the Bulova "replica," and did not obtain Col. Scott or NASA's permission for any of its uses of Col. Scott's name, identity, likeness or voice.  (Ryan Dec. at ¶10, Ex. W.)

**Likeness.**  Bulova advertised the Bulova "replica" with photos of Col. David Scott, on the moon, wearing his spacesuit and the red commander's stripe (found on the helmet, sleeve, and knee) that was worn by all mission commanders from Apollo 13 on—a small group of five astronauts.  (Scott Dec. at ¶9.)  Bulova did not obtain Col. Scott or NASA's permission when doing so.  (Ryan Dec. at ¶11.c, Ex. A at 111:13-112:10; 143:18-25.)  These photos are found in the booklet, and are also currently a part of the Bulova website.  (Ryan Dec. at ¶11, Exs. X, T.)

These uses, individually and taken together, were intended to and in fact created the false impression that Plaintiff endorsed Defendants' products, resulting in an enhanced value of Defendants' entire line of products, all to the detriment of Plaintiff.

Bulova also clearly and impermissibly attempted to mislead consumers into believing that Defendants and Plaintiff are working in conjunction to "make history" together with the "replica" moon watch: **"After Apollo 15's mission commander made lunar history – while wearing his personal Bulova chronograph – _we're_ making history again."**  (emphasis added) (Ryan Dec. at ¶12, Ex. M.)  (Londre Dec. at Ex. A, pgs. 15-16.)  This is a clear attempt to gain all of the benefits of an endorsement from Col. Scott without his consent.

Bulova also falsely described the Bulova "replica" as a "moon watch" that is an "authentic replica" of the Col. Scott Moon Watch.  However, the testimony of Bulova's Rule 30(b)(6) witness, Vice President Chris Napolitano, belies these claims.  (Ryan Dec. at ¶13, Exs. G, I, O, P, Q, R, V and A at 74:19-75:13 and 82:9-18.)

## IV.  ARGUMENT

The crux of Bulova's argument on summary judgment is as simple as it is misleading.  Bulova contends that there is no dispute of material fact because it admits to producing the advertisements at issue.  This argument, while rhetorically slick, is logically unsound.

This case does not turn on the existence of the advertisements.  Instead, this case turns on a fact-specific inquiry into what these advertisements *signify*.  Col. Scott has produced

1  evidence that shows that these advertisements are an unlawful use of his name and likeness,

2  that they implied endorsement, that Bulova's own customers referred to the Bulova "replica"

3  using his name, that there is a likelihood of consumer confusion, that Col. Scott was damaged,

4  both monetarily and emotionally, and that Bulova's conduct was negligent, if not deliberate.

5  Unless Bulova does not dispute *those* facts, there is a genuine dispute of material fact. And if

6  Bulova does concede those facts, it is not entitled to summary judgment.

7  **A. LEGAL STANDARD**

8  Summary judgment is only proper where there is "no genuine dispute as to any material

9  fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. Proc. 56(a). "The

10  moving party bears the burden of showing that there is no material factual dispute. Therefore,

11  the court must regard as true the opposing party's evidence, if supported by affidavits or other

12  evidentiary material." *In re NCAA Student-Athlete Name & Likeness Licensing Litig.*, 37 F.

13  Supp. 3d 1126, 1135 (N.D. Cal. 2014) (citations omitted).

14  Furthermore, "the non-moving party's evidence is to be taken as true and all inferences

15  are to be drawn in the light most favorable to the non-moving party." *Eisenberg v. Ins. Co. of

16  N. Am.*, 815 F.2d 1285, 1289 (9th Cir. 1987) (citation omitted).

17  The Ninth Circuit has ruled that in certain fact-specific contexts, summary judgment is

18  disfavored. This includes Lanham Act claims and right of publicity claims, both of which are

19  highly factual in nature. *See Wendt v. Host Int'l, Inc.*, 125 F.3d 806, 812 (9th Cir. 1997). In

20  particular, likelihood of confusion raises factual issues that are not proper for determination on

21  summary judgment. "Likelihood of confusion as to endorsement is therefore a question for the

22  jury." *Abdul-Jabbar v. GMC*, 85 F.3d 407, 413 (9th Cir. 1996) (citation omitted).

23  **B. PLAINTIFF HAS ESTABLISHED A GENUINE FACTUAL DISPUTE**
   **REGARDING HIS EIGHT PENDING CAUSES OF ACTION.**

24

25  **1. Plaintiff's First and Second Causes of Action are Not Duplicative.**

26  Defendants challenge Plaintiff's second cause of action, for invasion of privacy,

27  alleging that it is duplicative of his first cause of action for common law right of publicity, but

28  cite no case law for this proposition. (MSJ at 9:5-17.) Because the two claims are described in

separate lines of cases, Col. Scott is entitled to maintain both causes of action. *Compare*

Plaintiff's Opposition to Bulova's Motion for Summary Judgment          17-cv-00436-NC

1    *Eastwood v. Superior Court*, 149 Cal. App. 3d 409, 417 (Cal. Ct. App. 1983); *with Sinatra v.*

2    *Nat'l Enquirer, Inc.*, 854 F.2d 1191, 1193 (9th Cir. 1988).

3         **2.   Defendants Have Violated Plaintiff's Common Law Publicity and Privacy Rights.**

4         Col. Scott has valid common law causes of action where there is a reasonable material

5    fact dispute regarding the following four elements:  "(1) the defendant's use of the plaintiff's

6    identity; (2) the appropriation of plaintiff's name or likeness to defendant's advantage,

7    commercially or otherwise; (3) lack of consent; and (4) resulting injury."  *Maxwell v. Dolezal*,

8    231 Cal. App. 4th 93, 97 (Cal. Ct. App. 2014) (internal citations and quotations omitted); *see*

9    *also Eastwood v. Superior Court*, 149 Cal. App. 3d 409, 417 (Cal. Ct. App. 1983).

10        Bulova's defenses only pertain to the first element, the use of Col. Scott's identity,

11   therefore that element and that element alone will be addressed.  (*See* MSJ at 9:5-20:9.)

12        As shown by the evidence submitted with this opposition, Bulova has repeatedly used

13   Col. Scott's identity.  Bulova mentioned Col. Scott by name in a press release, advertisements,

14   website copy, and promotional information about the Bulova "replica."  Bulova referred to

15   Plaintiff as the Mission Commander of Apollo 15, used his photograph on its website, in a

16   booklet used to market the Bulova "replica," used his voice in a video advertisement, quoted

17   him in the booklet that is displayed prominently with in stores, and displayed the Apollo 15

18   mission patch, with Col. Scott's name partly covered, in its "interactive archive."  (Ryan Dec.

19   at ¶¶ 3, 8-11, 14, Ex. A, F-Y.)  All of these uses were marketing, and were an attempt to use

20   Col. Scott's goodwill for Bulova's benefit.  (Londre Dec., Ex. A.)

21        Bulova does not deny these facts, and instead raises two defenses: (1) incidental use

22   (MSJ at 10:18-12:28); and (2) the First Amendment, because the use was in the public interest

23   and/or is transformative.  (MSJ at 13:1-18:6.)  Neither of these defenses are persuasive.

24              a.   Bulova's Use of Col. Scott's Identity was Not "Incidental"

25        A use of a Plaintiff's identity is incidental where "it is published for purposes other than

26   taking advantage of his reputation, prestige, or other value associated with him."  *Yeager v.*

27   *Cingular Wireless LLC*, 627 F. Supp. 2d 1170, 1177 (E.D. Cal. 2008) (citation omitted).  Here,

28

Bulova deliberately invoked Col. Scott's achievements and fame in order to enhance the reputation of the Bulova "replica" and brand. Bulova's use, therefore, is not incidental.

Bulova's use is readily distinguishable from cases where "incidental use" was found. For example, " 'Incidental use' was found where a motion picture showed a factory building upon which there was a sign bearing the name and business of the plaintiff. *Merle v. Sociological Research Film Corp.*, 166 A.D. 376, 152 N.Y.S. 829 (1 Dept. 1915)). . . . The court in *Moglen v. Varsity Pajamas, Inc.*, found an 'incidental use' where a newspaper article reporting plaintiff's loss of a tennis match was partly reproduced, together with other articles, as a patchwork pattern in a fabric which defendants manufactured and sold for use in underwear, pajamas, and play togs." *Henley v. Dillard Department Stores*, 46 F. Supp. 2d 587, 594 (N.D. Tex. 1999) (granting summary judgment in favor of Don Henley where the phrase "Don's henley" was used to market henley shirts, and rejecting the defense of incidental use.)

Bulova attempts to downplay its extensive use of Col. Scott's name and "tiny" photograph when arguing that its use is merely "incidental." (MSJ at 10:19-22.) First, the photograph at issue is currently posted on Bulova's webpage, and is not "tiny" when displayed on a computer screen. Also, the use of Col. Scott's *identity* goes far beyond that, as discussed in detail in the Ryan Declaration. (Ryan Dec. at ¶¶ 8-9, Exs. A, F-V.)

Furthermore, brief uses of a Plaintiff's name or likeness are actionable, when such uses are prominent: "Even if the mention of a plaintiff's name or likeness is brief, if the use stands out prominently within the commercial speech or enhances the marketability of the defendant's product or service, the doctrine of incidental use is inapplicable. *See Pooley*, 89 F. Supp. 2d at 1113." *Yeager v. Cingular Wireless LLC*, 673 F. Supp. 2d 1089, 1100 (E.D. Cal. 2009) (denying Cingular's motion for summary judgment despite incidental use defense.)

Here, the scope of Bulova's use is staggering. Most right of publicity cases involve a single use, not an extended campaign to repeatedly mention and allude to a celebrity.

Bulova's case law undermines its incidental use argument. For example, the language Bulova quotes from *Maloney v. T3Media, Inc.*, 853 F.3d 1004 (9th Cir. 2017), pertains to the use of a person's identity "in news reporting, commentary, entertainment, works of fiction or

nonfiction, or in advertising that is incidental to such uses." (MSJ at 10:26-11:1.) Bulova was not engaged in news reporting, commentary, entertainment, in writing works of fiction or nonfiction, nor was Bulova engaged in advertising those works. *Maloney* is inapposite.

Case law distinguishes advertising from creative works. "Most courts conclude that the 'use' of another's identity by a traditional medium such as television, newspapers, magazines or books will be protected by the First Amendment defenses of either 'newsworthy' or 'incidental use.' On the other hand, ***if a commercial product uses the individual's identity for profit, First Amendment protection dissipates.***" *Cardtoons, L.C. v. Major League Baseball Players Ass'n*, 838 F. Supp. 1501, 1515 (N.D. Okla. 1993) (emphasis added). Here, Bulova has done exactly that. (Londre Dec., Ex. A.)

Defendants cite *Wong v. Golden State Auction Gallery, Inc*. In that case, Plaintiff Wong was listed on an appraisal as the person who ordered the appraisal. *Wong v. Golden State Auction Gallery, Inc*., 2016 U.S. Dist. LEXIS 27377 (N.D. Cal. Mar. 3, 2016). Wong was not a celebrity at all. Instead, it was the appraiser's name (like Plaintiff Scott's), that carried the value, not Wong's. *Wong* has virtually no similarity with the case at bar.

Defendants cite the *Wong* factors regarding incidental use, all of which favor Plaintiff:

***First,*** Plaintiff is a well-known public figure whose name, image and likeness (and goodwill) have a unique quality that results in profit to Defendants, not just on the sale of the Bulova "replica," but on all of their products. (Londre Dec., Ex. A at 16-25.) Internal Bulova correspondence reveals this to be true. Bulova initially sought to obtain Col. Scott as a "brand ambassador," attempted to borrow his watch, invited him to Baselworld, and wanted him to speak to the press. (Ryan Dec. at ¶¶15, 6, Ex. Z, D.) (Scott Dec. at ¶8.) After failing to obtain Col. Scott as a brand ambassador, Bulova also failed to obtain Astrophysicist Neil deGrasse Tyson as a celebrity ambassador, and contemplated gifting the Bulova "replica" to astronauts and twin brothers Scott and Mark Kelly to raise the watch's profile. (Ryan Dec. at ¶16, Exs. AA-BB.) As the declaration of marketing expert Larry Londre establishes, Col. Scott is a celebrity, we live in a celebrity-obsessed culture, and Bulova's conduct was intended to, and did, take advantage of Col. Scott's name, likeness and person to promote Bulova's image and

Plaintiff's Opposition to Bulova's Motion for Summary Judgment          17-cv-00436-NC

the image of the Bulova "replica." (Londre Dec., Ex. A at 16-17.) Bulova emails reveal that marketing the Bulova "replica" raised its profile world-wide. (Ryan Dec. at ¶17, Ex. CC.)

Bulova argues that the "unique quality or value" of the Bulova "replica" is that the ***Col. Scott Moon Watch*** was worn on the moon. (MSJ at 11:14-16.) However, this quality belongs to Col. Scott's Moon Watch, not the Bulova "replica." In fact, the Bulova "replica" is only an "external replica" of the Col. Scott Moon Watch, it is not suitable for use in outer space, and it has never been to the moon. (Ryan Dec. at ¶13, Ex. A at 74:19-75:13; 80:23-81:9 and 82:9-18, F, G, I, O, P, Q, R, V.) Bulova intentionally created an association between Col. Scott and the Bulova "replica" to make it marketable, which is why they use his name, identity, likeness and voice in marketing the Bulova "replica." (Londre Dec., Ex. A at 6-22.) These efforts were so successful that an early facebook commenter referred to the Bulova "replica" as the "Dave Scott Re-Edition." (Ryan Dec. at ¶18, Ex. DD.)

***Second,*** the use of Plaintiff's name, image and likeness contributes something of significance in that they are essential to raise the profile of the Bulova "replica" that is otherwise indistinguishable from any other Bulova timepiece. The watch is not a true replica. Bulova's 30(b)(6) marketing expert admitted as much during his deposition, when he was asked if the Bulova "replica" was an "authentic replication" and he responded "No, not a hundred percent," and admitted that the Bulova "replica" was "not meant to go into space." (Ryan Dec. at ¶13.b, Ex. A at 74:19-75:13; 80:23-81:9 and 82:9-18.) Bulova's marketing plan for the watch relies entirely on the Col. Scott story.

Bulova contends that its use of Col. Scott's identity contributes nothing of significance to the materials or the Bulova "replica," due to the limited scope of that use. (MSJ at 11:18-19, 11:22-23; Napolitano Dec. at ¶7, Exs. 1-2.) If so, it is curious that Bulova insists on continuing to use Col. Scott's voice, photograph, and title as mission commander in advertising.

Furthermore, Bulova is incorrect as a matter of law with regard to what sort of use is significant enough to constitute an unlawful use. In *Yeager*, the use of Gen. Yeager's name in a single press release was sufficient; in *Motschenbacher*, a drawing of a race car with a different styling details ***and no visible driver*** was sufficient; in *Downing*, a single photograph

of surfers in a surfer-themed Abercrombie and Fitch catalog was held to be sufficient, even

though Abercrombie and Fitch licensed the photograph and discussed the history of surfing in

the catalog; in *Pooley*, six seconds of a professional golfer in an eight minute video was

sufficient; and in *Ali*, a drawing of a naked man referred to as "the Greatest," was sufficient.

*See Yeager v. Cingular Wireless LLC*, 627 F. Supp. 2d 1170 (E.D. Cal. 2008); *Motschenbacher*

*v. R.J. Reynolds Tobacco Co.*, 498 F.2d 821 (9th Cir. 1974); *Downing v. Abercrombie & Fitch*,

265 F.3d 994 (9th Cir. 2001); *Pooley v. National Hole-in-One Ass'n,* 89 F. Supp. 2d 1108 (D.

Ariz. 2000); *Ali v. Playgirl, Inc.*, 447 F. Supp. 723 (S.D.N.Y. 1978).

  **Third,** the reference to Plaintiff is essential to the purpose and subject of the work,

which is the marketing material for the Bulova "replica"—in fact, the marketing materials

complained of center around the fact that Plaintiff wore a Bulova watch on the moon.  (Ryan

Dec. at ¶¶ 8-11, Ex. A, F-X; Londre Dec., Ex. A at 6-22.)

  Bulova contends that the references to Plaintiff are "fleeting," and that the materials

could have depicted "*any* astronaut."  (MSJ at 12:1-8; Napolitano Dec. at ¶¶ 4, 6-12, Exs. 1-5.)

Internal correspondence contradicts the idea that any astronaut could have been used, because

Bulova personnel repeatedly refer to obtaining images of Col. Scott or "the astronaut,"

meaning Col. Scott.  (Ryan Dec. at ¶19, Exs. EE-FF.)  Also, if the materials could have

depicted *any* astronaut, why was Col. Scott in fact depicted?  Why was his mission patch

displayed, his name included in interviews, a press release, and advertorials, his title as mission

commander used liberally, photos of him taken, all to promote the Bulova "replica," if *any*

astronaut would do?  Bulova's claim that this is somehow accidental is hard to credit.

  **Fourth,** Plaintiff's name and likeness are stated, referenced, and implied throughout the

material.  (Ryan Dec. at ¶ 8-11, Ex. A, F-X.)  Bulova planograms instruct retailers to display

the booklet front and center, and use Col. Scott's name and title in training materials provided

to downstream retailers, with the expectation that these retailers will tell the "story" regarding

Col. Scott to potential purchasers of the Bulova "replica."  (Ryan Dec. at ¶¶8-11, Ex. A, F-X.)

  Bulova claims that the link between Col. Scott and the Bulova "replica" is his own

doing.  (MSJ at 12:15-17.)  However, this is false.  Col. Scott is linked to the Col. Scott Moon

Watch, because he owned it and wore it in space.  But for Bulova's tireless efforts to tie Col. Scott to the Bulova "replica," no such link would exist.  Defendants simply do not have the right to market a watch using the name and likeness of a celebrity simply because that celebrity once wore a Bulova-branded watch, and doing so is a usurpation of Col. Scott's goodwill.

Just as Puma would not be able to use Usain "Lightning" Bolt's name and likeness to advertise the iconic gold Pumas he wore to the Rio Games in 2016 in the absence of a licensing agreement, nor can Bulova use Col. Scott's fame to advance its own brand.

Even celebrities must wear shoes and clothes, and, perhaps, watches.  Under Bulova's interpretation of the law, this means that cobblers, clothiers, and watchmakers are entitled to free use of those celebrities' names and likenesses for the purposes of publicity simply because those celebrities wear clothes and accessories.

Bulova cites *Aligo v. Time-Life Books, Inc.*, for the proposition that their use is incidental.  (MSJ at 12:18-26.)  However, the case is not analogous.  *Aligo* involves the use of a person's name and likeness by a *magazine*, in a promotion of that magazine's content, which is covered by the incidental use doctrine.  *See Cardtoons, L.C. v. Major League Baseball Players Ass'n*, 838 F. Supp. 1501, 1515 (N.D. Okla. 1993); *see also Yeager v. Cingular Wireless LLC*, 673 F. Supp. 2d 1089, 1100 (E.D. Cal. 2009).

Bulova has not published a book, or a magazine.  It has not created a documentary, a play, or a novel about its involvement in the space race.  This it could do.  Instead, it has at every turn only discussed this alleged "history" while marketing the Bulova "replica" which is not an authentic replica of the Col. Scott Moon Watch.  This is all marketing, as set forth in detail in marketing expert Larry Londre's declaration. (Londre Dec., Ex. A.)

### b.  Bulova's "Speech" is Not Constitutionally Protected

As Samuel Johnson once said, "patriotism is the last refuge of the scoundrel."  In its motion for summary judgment, Bulova attempts to cloak its desire for profit in the Constitution.  This attempt is unavailing.  (MSJ at 13:2-14:8.)  Here, Bulova is not a crusading journalist or a struggling artist.  Instead, it is a company seeking to bask in borrowed glory from an astronaut and profit commercially from his efforts, his goodwill, and his fame.

While the Apollo 15 moon landing holds great historical significance, Defendants' advertisements do not.  The booklet, an advertisement for the sale of the Bulova "replica," is not historically or artistically significant.  It is not entitled to the constitutional protections often not afforded to legitimate news outlets.

Defendants' conduct is analogous to that in *Comedy III*, where the court rejected First Amendment protections for T-shirts of the Three Stooges.  The California Supreme Court held: "Although surprisingly few courts have considered in any depth the means of reconciling the right of publicity and the First Amendment, we follow those that have in concluding that depictions of celebrities amounting to little more than the appropriation of the celebrity's economic value are not protected expression under the First Amendment."  *Comedy III Productions, Inc. v. Gary Saderup, Inc.*, 25 Cal. 4th 387, 400 (Cal. 2001).

Plaintiff's publicity claim is grounded in well-established law:  "The right of publicity is often invoked in the context of commercial speech when the appropriation of a celebrity likeness creates a false and misleading impression that the celebrity is endorsing a product. Because the First Amendment does not protect false and misleading commercial speech and because even nonmisleading commercial speech is generally subject to somewhat lesser First Amendment protection, the right of publicity may often trump the right of advertisers to make use of celebrity figures."  *Comedy III,* at 396.  Notably, Defendants chose not to include a disclaimer that Colonel Scott is not endorsing or affiliated with Bulova in its advertisements.

The crux of each individualized analysis of the interplay between first amendment protection and the right to publicity rests on the purpose and intention of the use.  When evaluating the first fair use factor, the purpose and character of the use:  "the central purpose of the inquiry into this fair use factor 'is to see, in Justice Story's words, whether the new work merely "supersede[s] the objects" of the original creation, [citations], or instead adds something new, with a further purpose or different character, altering the first with new expression, meaning, or message; it asks, in other words, whether and to what extent the new work is "transformative." ' "  *Comedy III Productions, Inc. v. Gary Saderup, Inc*., 25 Cal. 4th 387, 404 (Cal. 2001).  Plaintiff's name, voice, identity and unaltered photographs in

Defendant's advertisements are not transformative, as nothing has been "transformed" nor is any unique or artistic message associated with it, other than as an advertisement to sell a watch.

Here, the offending use is in the advertising and marketing materials designed to assist in the commercialization, for Defendants' exclusive profit, of the Bulova "replica." Defendants cannot be afforded constitutional protection merely by the inclusion of historical facts in its marketing material that makes it appear as though Col. Scott is connected to or otherwise endorsing the product.  Indeed, the defendants in *Yeager* and *Abdul-Jabbar* were punished for doing exactly that.  *Yeager v. Cingular Wireless LLC*, 627 F. Supp. 2d 1170 (E.D. Cal. 2008); *Abdul-Jabbar v. GMC*, 75 F.3d 1391 (9th Cir. 1996).

As the *Yeager* and *Abdul-Jabbar* courts realized, if citing a historical fact about a celebrity was an end-run around the right to publicity, the right itself would quickly be rendered meaningless.  In order to create the appearance of an endorsement, or associate themselves with a celebrity, an advertiser would need only to state a historical fact about the celebrity in the text of the advertisement, and invoke the protection of the First Amendment.

  c. <u>Bulova's Use of Col. Scott's Identity was Not in the Public Interest</u>

While it is clear that works for profit <u>may</u> be afforded First Amendment protections if they are in the public interest, this by no means is a wholesale immunization against liability. Public interest protection depends upon the purpose of the unauthorized use and the manner in which it was used.  Unlike the Defendants in every case cited by Bulova in this motion, Bulova and Kay are not artists, news broadcasters, entertainers, or documentarians.  Moreover, unlike every successful case cited by Defendants in this motion, ***<u>the infringing use is not the product itself.</u>***  It is supplemental marketing and advertising material for the product, including the widespread use of Plaintiff's name in all online advertisements Defendants and retailers.  This critical distinction removes Defendants' use as a work in the public interest because it is merely an advertisement for the sale of a product (a watch) and nothing more.

This case is on all fours with *Keller v. Elec. Arts Inc.* and *Davis v. Elec. Arts, Inc.*  In *Keller v. Elec. Arts Inc.*, a former college football player sued for the use of his likeness in a video game.  *Keller v. Elec. Arts Inc.* (In re NCAA Student-Athlete Name & Likeness

Plaintiff's Opposition to Bulova's Motion for Summary Judgment   17-cv-00436-NC

Licensing Litig.), 724 F.3d 1268, 1283 (9th Cir. Cal. 2013).  In *Keller*, "Every real football player on each team included in the game has a corresponding avatar in the game with the player's actual jersey number and virtually identical height, weight, build, skin tone, hair color, and home state."  *Id.* at 1271.  The Ninth Circuit held that, unlike the cases on which Defendant relied, Defendant was "not publishing or reporting factual data" and, thus the public interest defense did not apply.  *Id.*

In *Davis v. Elec. Arts, Inc.,* Electronic Arts' Madden NFL video game included historical data on NFL teams and players without obtaining a license for use.  The court observed:  "although the players on the historical teams are not identified by name or photograph, each is described by his position, years in the NFL, height, weight, skin tone, and relative skill level in different aspects of the sport." *Davis v. Elec. Arts, Inc.*, 775 F.3d 1172, 1175 (Ninth Cir. Cal 2015).  In *Davis*, the Court, citing *Keller*, held that the public use defense did not apply because, just like in *Keller*, "although Madden NFL contains some factual data about current and former NFL teams and players, it is 'a game, not a reference source' or a 'publication of facts' about professional football." *Id*. at 1179.  Here, while some of the advertisements for the Bulova "replica" contain some historical data, the product is a watch, not a reference source, or a publication of facts about the Apollo 15 space mission.

The U.S. Supreme Court's decision in *Zacchini v. Scripps-Howard Broad. Co.* squarely favors Plaintiff.  In *Zacchini,* Plaintiff's entire act was broadcast on a newscast.  The Court held that, despite being a newscast, the broadcast of the entertainer's performance was not afforded a constitutional free speech privilege as a defense.  The Court noted, "The rationale for [protecting the right of publicity] is the straight-forward one of ***preventing unjust enrichment by the theft of good will.***  No social purpose is served by having the defendant get free some aspect of the plaintiff that would have market value and for which he would normally pay." *Zacchini,* 43 U.S. 562, 576 (US 1977) (citations omitted, emphasis added).

Each of Defendants' cited cases are easily distinguishable from the case at bar, leaving Defendant with no analogous legal authority:

In *Dora*, (MSJ at 14:15-17), a movie was made about a famous surfer, in the context of the history of surfing.  If *Dora* had instead been about an advertising campaign featuring Mickey Dora surfing, or if Bulova had released a feature film about its involvement in the space race with no commercial tie-ins, Bulova's citation of *Dora* would be more persuasive.

In *Gionfriddo*, (MSJ at 14:17-19), Plaintiffs, former baseball players, sued over the use of their names and statistics, in Major League Baseball programs and websites.  *Gionfriddo v. Major League Baseball*, 94 Cal. App. 4th 400, 409 (2001).  The court held that the uses were not commercial speech because they did not sell a product.  The public interest there was the need for the statistics on the game being played, with MLB being the most likely source to publish this information, as it kept the statistics.  And as MLB kept its own statistics, they were merely publishing their own information, just as in *Montana*.  This would be akin to NASA using Plaintiff's name and image in a historical account of the Apollo 15 mission.  MLB's use is not analogous to Defendant's use of Plaintiff's name, image, and likeness to sell a watch.

The *Hilton* case (MSJ at 14:19-21) actually supports Plaintiff's position.  Although the court ruled that Ms. Hilton's celebrity was a matter of public interest for the purpose of an anti-SLAPP motion, it rejected Hallmark's "public interest defense" to Ms. Hilton's claim of misappropriation of name and likeness because the defense only applies to "the publication of newsworthy items," and the birthday card in question was not newsworthy.  *Hilton v. Hallmark Cards*, 599 F.3d 894, 903-907, 912 (9th Cir. 2010).  In the same way, Bulova's advertisements promote a product, they do not merely report information in a newsworthy fashion.

In *Winter* and *Kirby*, (MSJ at 14:27-28) creative works (a comic book and a video game) were at issue.  Bulova did not create a comic book or a video game here—they created and are advertising the Bulova "replica."  Furthermore, in *Kirby*, the court held that despite the fact that the video game avatar was different from Ms. Kirby, there was a genuine dispute of material fact regarding whether the use was transformative, permitting the case to go forward to trial.  *Kirby v. Sega of Am., Inc.*, 144 Cal. App. 4th 47, 56 (Cal. Ct. App. 2006).

In *Montana*, the San Jose Mercury news sold a poster containing a photograph of Joe Montana, which was originally published in its newspaper as a special insert discussing the

49er's victory.  The Court found in favor of the Mercury News because the newspaper was merely re-publishing its own, already constitutionally protected work, in its entirety. *Montana v. San Jose Mercury News, Inc*., 34 Cal. App 4th 790 (1995).  Again, unlike in Plaintiff's case, the work itself was the product (and not merely advertising material).

        *Aldrin* is distinguishable for the same reason.  In *Aldrin*, Defendant Topps used Aldrin's name and image in a set of "American heroes" historical trading cards.  The Court, citing *Hilton*, discussed in detail below, held that "the [trading] cards propose no commercial transaction, and are not advertisements for any product, let alone an unrelated product. Rather, as in <u>Hilton</u>, the speech <u>is</u> the product, and is protected."  *Aldrin v. Topps Co*., 2011 U.S. Dist. LEXIS 110800 at *7 (C.D. Cal. Sept. 27, 2011).  Again, Defendants are selling a watch, not the online and print advertising which contain the unauthorized use.  Unlike in *Aldrin*, where the product was a description of Aldrin's achievements in space exploration, the product at issue here (a watch) bears no connection to why Plaintiff is famous.[1]  Plaintiff is not famous for wearing a watch in space, but rather, for being one of 12 people to have walked on the moon.  This fame did not happen coincidentally – it was the result of years of hard work, dedication, bravery, and sacrifice, none of which have anything to do with Defendants or their watch.

        In a footnote purporting to be about the *Montana* case, Bulova argues that the booklet promoting the Bulova "replica" is "not available to or displayed to the public."  (MSJ at 15 n.8.)  That is patently false.  Bulova repeatedly displayed the booklets in stores and at promotional events, including Feldmar.  (Ryan Dec. at ¶¶9.d, 20, Exs. T-U, GG.)

        d.  <u>Bulova's Use of Col. Scott's Identity was Not Transformative</u>

        Defendants attempt to argue that the use of Plaintiff's photograph was transformative, despite being an unaltered, exact match to Plaintiff's actual image.  This argument is simply nonsensical.

---

[1] Because the Bulova "replica" has no bearing on why Plaintiff is famous, Defendants have no First Amendment protection:  "Defendant has cited, and the Court is aware of, no authority establishing that there is any First Amendment protection for the use of a celebrity's name, transformed or otherwise, to sell an unrelated product." *Estate of Fuller v. Maxfield & Oberton Holdings, LLC*, 906 F. Supp. 2d 997, 1006 (N.D. Cal. 2012).

In *Comedy III*, the California Supreme Court delineates five factors in determining whether a work is sufficiently transformative to obtain First Amendment Protection:

> (1) if "the celebrity likeness is one of the 'raw materials' from which an original work is synthesized," it is more likely to be transformative than if "the depiction or imitation of the celebrity is the very sum and substance of the work in question." *Comedy III*, at 809.

> (2) the work is protected if it is "primarily the defendant's own expression"—as long as that expression is "something other than the likeness of the celebrity." *Id.*

> (3) the inquiry is "more quantitative than qualitative" and should ask "whether the literal and imitative or the creative elements predominate in the work." *Id.*

> (4) A "subsidiary inquiry" as to whether "the marketability and economic value of the challenged work derive primarily from the fame of the celebrity depicted" should be used in close cases) *Id.* at 810.

> (5) "when an artist's skill and talent is manifestly subordinated to the overall goal of creating a conventional portrait of a celebrity so as to commercially exploit his or her fame," the work is not transformative. *Id.*

*Comedy III*, at 809-810.

Utilizing these factors, the Court in *Comedy III* found that the work, a lithograph used to create silk-screened T-shirts of the Three Stooges, did not add significant creative elements so as to be transformed into something more than a mere celebrity likeness or imitation. In so doing, the California Supreme Court upheld Plaintiff's right of publicity, "recognizing that certain forms of commercial exploitation of celebrities that violate the state law right of publicity do not receive First Amendment protection. *Id.* at 403.

Applying the *Comedy III* factors to this case, Defendant's use is clearly not transformative. Defendants used Plaintiff's name, image, and likeness to sell the Bulova "replica," the importance of which is based entirely on its link to Plaintiff. While the marketing booklet contained more information than simply Plaintiff's name and image, it merely recounted additional historical facts from the Apollo 15 mission in an effort to highlight

Plaintiff Scott's accomplishments to further bolster the appeal of the Bulova "replica" and imply a connection between the Bulova "replica" and Plaintiff.  There were no creative elements in the marketing material.  Plaintiff's image was unaltered.  It was not the "raw material;" it was the finished product.  There was no "artist" nor any "skill and talent" involved. Again, and most importantly, neither the marketing booklet, nor any other adverting for the Bulova "replica," was for sale.  Thus, the "work" (the booklet and other advertising) had no independent value at all.  The booklet and online advertising were not the product for sale.  And certainly the economic value of the Bulova "replica," as marketed by Defendants, was derived exclusively from the fame of the celebrity depicted: Plaintiff.

In *Keller v. Electronic Arts, Inc*. (In re NCAA), a former college football player's likeness was used in a video game.  The Ninth Circuit held that "under the 'transformative use' test developed by the California Supreme Court, EA's use does not qualify for First Amendment protection as a matter of law because it literally recreates Keller in the very setting in which he has achieved renown."  *Keller v. Elec. Arts Inc.* (In re NCAA Student-Athlete Name & Likeness Licensing Litig.), 724 F.3d 1268 (9th Cir. Cal. 2013).  Defendants' use is analogous in that it the booklet contains an unaltered photograph of Plaintiff in the very setting in which he has achieved renown.

While the works in *Guglielmi*, *Kirby,* and *Hilton*, cited by Defendants, were found to be transformative, the unauthorized use was the product itself (instead of advertising material for the product being sold as in this case).  In each case, the work contained significant artistic elements (unlike in this case, where Plaintiff's name and a clear and untouched photograph were used).  In *Guglielmi*, the work was a fictionalized version of a celebrity's life, essentially incorporating his name, image, and likeness into a work of fiction.  *Guglielmi v. Spelling-Goldberg Productions*, 25 Cal. 3d 860 (Cal. 1979).  In *Kirby,* a video game character was loosely based on a lead singer, but bore significant distinctions on height, weight, hairstyle, costume, and setting.  *Kirby v. Sega of America, Inc.,* 144 Cal. App. 4th 47.  In *Hilton*, the work was a greeting card which incorporated a cartoon version of Hilton and her "that's hot" motto into a birthday joke.  *Hilton v. Hallmark Cards*, 599 F. 3d 894 (9th Cir. 2010).  These cases are

clearly not analogous.  The distinction between these cases and the case at bar is striking, and underscores the legal and factual dispute regarding the transformative use defense in this case.

### 3.   Defendants Have Violated Plaintiff's Section 3344 Publicity Rights.

California Civil Code Section 3344 provides: "Any person who knowingly uses another's name, voice, signature, photograph, or likeness, in any manner, **on or in products,** merchandise, or goods, or for purposes of advertising or selling, or soliciting purchases of, products, merchandise, goods or services, without such person's prior consent … shall be liable for any damages sustained by the person or persons injured as a result thereof."  Cal. Civ. Code §3344(a) (emphasis added).

Defendants do not challenge the existence of a genuine dispute of material facts with regard to the elements of a claim under Section 3344.  Instead, they only raise the defenses of public affairs and that Plaintiff is not "readily identifiable" from the photograph.

### a.   The Public Affairs Exception Does Not Apply to Defendants.

California Civil Code Section 3344(d) provides that, "For purposes of this section, a use of a name, voice, signature, photograph, or likeness in connection with any news, public affairs, or sports broadcast or account, or any political campaign, shall not constitute a use for which consent is required under subdivision (a)."

This exception is inapplicable because Defendants are not news, public affairs, or sports broadcasters or documentarians.  Notably, each of the cases cited by Defendants was filed against *news organizations or moviemakers* (i.e, members of the press, or writers, directors, and producers, not advertisers and salesmen) for their dissemination of news stories and documentaries.  (MSJ at 18:9-19:2.)  Defendants' use was not in connection with any news story or documentary, but rather with the sale of a watch, which is not news.

"Even newsworthy actions may be subjects of § 3344 liability when published for commercial rather than journalistic purposes.  The Ninth Circuit has squarely held that the commercial use of a person's newsworthy acts may nonetheless still result in liability under §_3344_."  *Fraley v. Facebook, Inc.*, 830 F. Supp. 2d 785, 805 (N.D. Cal. 2011).  *Fraley* cited *Downing v. Abercrombie & Fitch*, wherein the court rejected a clothing retailer's

Plaintiff's Opposition to Bulova's Motion for Summary Judgment          17-cv-00436-NC

newsworthiness argument where the retailer used plaintiff's photograph "essentially as window-dressing to advance the catalog's surf-theme." *Downing v. Abercrombie & Fitch*, 265 F.3d 994 (9th Cir. Cal. 2001). *Fraley* also quoted *Abdul-Jabbar v. GMC*: "While [Kareem Abdul-Jabbar's] basketball record may be said to be 'newsworthy,' its use is not automatically privileged. GMC used the information *in the context of an automobile advertisement*, not in a news or sports account. Hence GMC is not protected by section 3344(d)." *Abdul-Jabbar v. GMC*, 85 F.3d 407, 416 (9th Cir. 1996). In *Fraley*, *Downing*, and *Abdul-Jabbar*, the Courts consistently held that, while information in a commercial may be newsworthy, the use is not a "news account" sufficient to invoke the protection of section 3344(d). Under this analysis, the public affairs exception does not apply to Defendants' use of Plaintiff's name, image, and likeness in its advertising material, because the use is not a "news account."

> b. Plaintiff is Readily Identifiable in the Marketing Material.

Defendants' argument that Plaintiff is not readily identifiable misses the mark. First, Defendants only make reference to Plaintiff's photograph. They do not challenge Col. Scott's contention that they used his name, voice, or likeness, which is also actionable under the statute. Plaintiff's name, title, photograph and ***voice*** were used in various versions of the marketing material for the Bulova "replica," and continue to be used with downstream retailers and on third party websites. (Londre Dec., Ex. A at 15-16.) This evidence alone is grounds enough to deny the motion.

Further, the photograph used has not removed all identifiable markings (certainly not the unique Commander's red stripe on the sleeve, pants, and helmet, or the lunar rover, first used on the Apollo 15 mission). In *Newcombe v. Adolf Coors Company*, the court found that there was a genuine issue of fact that a drawing of a photograph of Plaintiff was his likeness, even though the drawing differed from the photograph in several ways. *Newcombe v. Adolf Coors Company*, 157 F.3d 686, 691-693 (9th Cir. 1998). Here, Plaintiff's image is unretouched and it is indisputably Plaintiff. (Scott Dec. at ¶9.) Further, Defendants have created a lasting association between Plaintiff and the Bulova "replica." Defendants cannot unring the bell.

For the reasons set forth above, Plaintiff has established a genuine material fact dispute with regard to Bulova's alleged defenses.

**4.   Defendants Have Violated Plaintiff's Lanham Act Rights**

Plaintiff's Fifth and Sixth Causes of Action, for False Designation of Origin and False Advertising, both arise under the Lanham Act, which bars false designations of origin, and false product descriptions, commercially and otherwise:

> (1) Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which—
> (A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or
> (B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities,
> shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C. 1125(a)(1).

Defendants falsely designated the origin of the product, the Bulova "replica," which has no connection to the space program, Apollo 15, or Col. Scott, by using Col. Scott's name and title (as mission commander of Apollo 15) in such a manner that it was "likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person."  15 U.S.C. 1125(a)(1)(A).

Furthermore, by referring to the Bulova "replica" as a "moon watch" and an "authentic replica," Defendants, "in commercial advertising or promotion, misrepresent[ed] the nature, characteristics, qualities, or geographic origin of . . . goods . . ." 15 U.S.C. 1125(a)(1)(B).

In Bulova's extensive advertising of the Bulova "replica," it repeatedly referred to the watch as an "accurate replica" or a watch that "accurately replicates" the Col. Scott Moon Watch.  When it came time for Bulova to describe the Bulova "replica" under penalty of

1   perjury, in Chris Napolitano's declaration in support of this motion for summary judgment, for

2   the first time, Bulova described it as an "external replica."  (Napolitano Dec. at ¶4.)  During his

3   30(b)(6) deposition as Bulova's marketing expert, Mr. Napolitano admitted that the watch was

4   not a "100% replica" and was not designed for the conditions on the moon.  (Ryan Dec. at ¶13,

5   Ex. A 74:19-75:13; 80:23-81:9 and 82:9-18.)

6        a.   Bulova's Use was Not a Nominative Fair Use

7        Bulova's nominative fair use is not persuasive—Col. Scott is not a Volkswagen

8   someone wishes to repair, he is a human being.  (MSJ at 20:11-22:15.)  A much more apt

9   analogy would be as follows:

10       Brad Pitt, an avid car collector, purchased a Chevrolet Camaro Super Sport ("SS") in

11  2009.  In our hypothetical, in 2018, his assistant lists the car for sale on Craigslist.  Under

12  nominative fair use, Mr. Pitt's assistant may refer to the car as a Chevrolet Camaro SS.  He or

13  she may also indicate that the car was owned and driven by Mr. Pitt.  If someone is to buy that

14  car from Mr. Pitt, they could themselves advertise it as a Camaro SS, and state that it was

15  owned by Mr. Pitt.  Chevrolet, on the other hand, is not at liberty to purchase a copyrighted

16  image of Mr. Pitt and his Camaro, and re-release the car as the "Hollywood Camaro SS" using

17  Mr. Pitt's photo and referring to him by his nickname of "Brad the Pitt-Bull" when marketing

18  the car.  Mr. Pitt's sale of the car is a nominative fair use—you cannot describe a Chevy

19  Camaro SS without calling it precisely that.  Chevrolet's hypothetical actions, on the other

20  hand, are not.  The fact that Brad Pitt owned and loved a Camaro and appeared in public with it

21  does not mean that Chevrolet can discuss that "shared history" when marketing the car.

22       Bulova's use is clearly not nominative, and it misconstrues the doctrine of nominative

23  fair use.  Nominative fair use applies where the word used is "the only word reasonably

24  available to describe a particular thing is pressed into service."  *Abdul-Jabbar v. GMC*, 85 F.3d

25  407, 412 (9th Cir. 1996).  Here, that is simply not the case.  Bulova has described the Bulova

26  "replica" at length, including on its own website, without reference to either Col. Scott, his title

27  as mission commander of Apollo 15.  (Ryan Dec. at ¶21.)

28       Plaintiff has raised a triable issue of material fact with regard to nominative fair use.

b.  Bulova's Conduct is Likely to Cause Confusion

Bulova's use of Plaintiff's name, image, and likeness creates a false impression in the eyes of the public that Plaintiff is endorsing the Bulova "replica" or is connected with Bulova in some material way.  (Ryan Dec. at ¶18, 22, Exs. DD, HH.)

On its face, Bulova's own language supports such an interpretation.  Both in its online description, its video advertising, and in the marketing booklet, Defendants clearly and impermissibly attempt to mislead consumers into believing that Defendants and Plaintiff are working in conjunction to "make history" again together with the Bulova "replica": **"After Apollo 15's mission commander made lunar history – while wearing his personal Bulova chronograph – _we're_ making history again."**  (Ryan Dec. at ¶12, Ex. M; Londre Dec., Ex. A at 15-16.) (Emphasis added).  Col. Scott is not part of the "we" that Bulova describes, nor is the Bulova "replica" "historic."  In addition to being false and misleading, it also borders on the ridiculous to state that an alleged replica watch is making history.

Finally, likelihood of confusion is a fact question that should be decided by the jury. "Likelihood of confusion as to endorsement is therefore a question for the jury."  *Abdul-Jabbar v. GMC,* 85 F.3d 407, 413 (9th Cir. 1996), *citing White v. Samsung Elec. Am., Inc.,* 971 F.2d 1395, 1400-01 (9th Cir. 1992).  In *Abdul-Jabbar*, trivia questions about "Lew Alcindor" (Mr. Abdul-Jabbar's birth name) juxtaposed with an advertisement for an Oldsmobile was sufficient to withstand summary judgment.  So too are Col. Scott's claims.

c.  Bulova Made False Statements

Bulova described the Bulova "replica" repeatedly in its advertising as being an "authentic replica" of the watch worn by Apollo 15's mission commander on the moon.  This assertion is patently false.  The Bulova "replica," unlike the Col. Scott Moon Watch, has a quartz movement instead of an expensive Swiss movement, it is not a "moon watch," as it is has never been to the moon, it is only an "external replica" according to Bulova's 30(b)(6) witness, despite the fact that language occurs nowhere in the subject advertising.  It is not a "100%" replica, according to that same witness, and it was not designed to withstand conditions on the moon.  (Ryan Dec. at ¶13, Ex. A at 74:19-75:13; 80:23-81:9 and 82:9-18.)

Bulova's only arguments regarding false statements are that they did not make any, which is false, and that Col. Scott was not injured.  As set forth in Col. Scott's declaration, he was injured because he has been associated with a product that he would never endorse, because it is not a truthful and accurate replica of the watch he wore.  (Scott Dec. at ¶10-15.)  Furthermore, as a result of Bulova's actions, Col. Scott has lost future income because he is unable to reach any agreements to endorse a watch.  (Bania Dec. at ¶8.)

d.   Bulova Use of Col. Scott's Name Violates Lanham Act

Bulova has referred to Col. Scott by name, as mission commander, and as mission commander of Apollo 15.  All of these uses constitute violations of the Lanham Act.  *See Waits v. Frito Lay*, 978 F.2d 1093, 1106 (9th Cir. 1992) (*citing Allen v. National Video, Inc.*, 610 F. Supp. 612, 625-626 (S.D.N.Y. 1985) for the proposition that a celebrity's name and face are tantamount to the interests of a trademark holder in a distinctive mark).

Bulova misconstrues the Lanham Act, with the argument that because their use of Col. Scott's name is not a use in a ***trademark sense***, their use is lawful.  (MSJ at 25:1-19.)  This is incorrect.  As set forth in the Lanham Act itself and in *Waits*, a misappropriation of a celebrity's name and likeness is a violation of the Lanham Act as long as it is a false endorsement.  "Specifically, we read the amended language to codify case law interpreting section 43(a) to encompass false endorsement claims. Section 43(a) now expressly prohibits, *inter alia,* the use of any symbol or device which is likely to deceive consumers as to the association, sponsorship, or approval of goods or services by another person."  *Waits v. Frito Lay*, 978 F.2d 1093, 1107 (9th Cir. 1992).  Bulova's trademark argument is a non-sequitur.

**5.  Plaintiff's Negligence and Emotional Distress Claims Are Supported by Evidence.**

Bulova contends that Col. Scott's claims for Emotional Distress and Negligence are "not necessary" and that it is entitled to summary judgment because (1) Bulova owes plaintiff no duty; (2) its conduct was not outrageous enough to cause emotional distress; and (3) plaintiff's negligence claim is duplicative of his other claims.

***First,*** Bulova owes plaintiff a duty of care under California Law.  "Everyone is responsible, not only for the result of his or her willful acts, but also for an injury occasioned to

another by his or her want of ordinary care or skill in the management of his or her property or person, except so far as the latter has, willfully or by want of ordinary care, brought the injury upon himself or herself." Cal Civ Code § 1714(a).

**Second,** Col. Scott has presented evidence that Bulova's conduct is indeed outrageous. As set forth in Col. Scott's declaration, Bulova's conduct caused him to be "very upset," that he has suffered emotionally because "people may now believe I have abandoned my private life in favor of commercially promoting products which is not how I wish to be perceived by the public," and that he feels "humiliated, embarrassed, and mentally distressed because of the new public persona Bulova and Kay's have forced upon me; an Apollo astronaut that endorses products, let alone a cheap and deceptive product." (Scott Dec. at ¶¶10-15.)

**Third,** Plaintiff's claim for Negligence is not duplicative because it requires distinct elements and may be proven by different or fewer facts. The elements for Negligent Infliction of Emotional Distress and Negligence are distinct. *Compare* CACI 400 with CACI 1620.

## V.  CONCLUSION

Plaintiff has provided adequate evidence and/or legal argument to support all eight of his pending claims. Summary judgment should therefore be denied.

DATED:  December 28, 2017                    MEZZETTI LAW FIRM, INC.


                                                        */s/ Robert L. Mezzetti, II*
                                                        ROBERT L. MEZZETTI, II


## CERTIFICATION

I, Robert L. Mezzetti, II, am the ECF user whose ID and password are being used to file this Stipulation in compliance with Local Rule 5-1(i)(3). I hereby attest that the concurrence of the filing of this document has been obtained from each of the other signatories indicated by a conformed signature (/s/) within this document.

DATED:  December 28, 2017              By: *  /s/ Robert L. Mezzetti, II*
                                                        ROBERT L. MEZZETTI, II

Plaintiff's Opposition to Bulova's Motion for Summary Judgment              17-cv-00436-NC