ROBERT L. MEZZETTI II (SBN 114282)
Rob@mezzettilaw.com
MAUREEN PETTIBONE RYAN (SBN 245438)
Maureen@mezzettilaw.com
CHRISTOPHER R. MEZZETTI (SBN 282287)
Chris@mezzettilaw.com
MEZZETTI LAW FIRM, INC.
31 East Julian Street
San Jose, California 95112
Telephone (408) 279-8400
Facsimile (408) 279-8448


Attorneys for Plaintiff
Colonel David Randolph Scott (Ret.)

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| COLONEL DAVID RANDOLPH SCOTT, <br><br> Plaintiff, <br><br> v. <br><br> CITIZEN WATCH COMPANY OF AMERICA, INC., a California Corporation (successor to BULOVA CORPORATION, a New York corporation); STERLING JEWELERS, INC. dba KAY JEWELERS, a Delaware corporation; and DOES 1 through 99, inclusive, <br><br> Defendants. | Case Number: 17-CV-00436-NC <br><br> PLAINTIFF'S OPPOSITION TO KAY'S MOTION FOR SUMMARY JUDGMENT PURSUANT TO FED. R. CIV. P. 56(a) <br><br> Date:  February 7, 2017 <br> Time:  1:00 p.m. <br> Courtroom:  7 <br> Judge:  Hon. Nathanael Cousins <br><br> Complaint Filed:  January 27, 2017 |

1   Colonel David Randolph Scott ("Plaintiff" or "Col. Scott"), submits the following

2   Opposition to Sterling Jewelers, Inc., d/b/a Kay Jewelers ("Kay Jewelers") Motion for

3   Summary Judgment:

## I.   INTRODUCTION

4

5   Kay Jewelers moves for summary judgment on the basis that it is not legally liable for

6   the misuse of Col. Scott's name, identity, likeness, and voice or for violations of the Lanham

7   Act because it is an "innocent retailer" and it did not control how Bulova marketed the Bulova

8   "replica" of Col. Scott's Moon Watch.[1]

9   Kay Jeweler's motion makes three fatal logical errors.  First, Kay presumes that if its

10   conduct is no longer unlawful, Col. Scott's lawsuit has no merit.  That is incorrect.  Col. Scott

11   is still entitled to damages for past misconduct.  Second, Kay's alleged "innocent retailer"

12   defense is not an existing defense in the Ninth Circuit or California, and the "innocent retailer"

13   cases Kay cites from other jurisdictions are inapposite.  Third, Kay presumes that because its

14   contract with Bulova states that Bulova alone is responsible for obtaining permissions and

15   releases from third parties, that this somehow affects Col. Scott's rights.  That is not so.  Kay

16   Jewelers and Bulova do not have the right to contract away Col. Scott's right to publicity.

## II.   STATEMENT OF ISSUES PURSUANT TO LOCAL RULE 7-4

17

18   1.   Whether Plaintiff established a genuine dispute of fact regarding his legal claims.

## III.   FACTS

19

20   **A.   Kay Jewelers' Unauthorized Use of Plaintiff's Name, Identity, and Likeness.**

21   In an email dated January 6, 2016, Kristen Reilly of Bulova sent the following copy to

22   Kay Jewelers to be included on its website, with a photo of the Bulova "replica":

23   The Special Edition Moon Watch Replica

24   From the UHF Collection. Taking inspiration from
    astronaut Dave Scott's personal Bulova chronograph worn

25   during the Apollo 15 moon landing. Six hand calendar
    chronograph, stainless steel screw-back case in silver-tone finish

26

---

27   [1] Kay Jewelers also recapitulates many of Bulova's arguments, without elaboration or

28   additional case law.  (Kay MSJ at 1:9-3:8; 3:15-17; 10:16-20.)  Those arguments have been
    addressed in Col. Scott's opposition to Bulova's motion for summary judgment, and will not
    be repeated here.  Col. Scott's responses are incorporated by reference.

Plaintiff's Opposition to Kay's Motion for Summary Judgment                    17-cv-00436-NC

and black dial, sapphire glass, interchangeable black leather and nylon straps with three-piece buckle closure, and water resistance to 50 meters.

Powered by Bulova's proprietary, high-performance UHF quartz movement, with a vibrational frequency of 262kHz—eight times greater than a standard quartz movement for unparalleled accuracy.

Diameter: 45mm Thickness: 13.5mm $550

(Declaration of Maureen Pettibone Ryan in Opposition to Kay's Motion for Summary Judgment "Ryan Dec., Kay" at ¶3, Ex. A.)

Kay Jewelers placed the following text on its website.  The words also included in Bulova's description are in bold:

> This special edition moon watch replica **tak**es **inspiration from astronaut Dave Scott's personal Bulova chronograph worn during the Apollo 15 moon landing.** The watch is **powered by Bulova's proprietary, high-performance UHF quartz movement, with a vibrational frequency of 262kHz—eight times greater than a standard quartz movement for unparalleled accuracy.** The black chronograph men's watch has three subdials, a date window, tachymeter scale bezel set in a 45mm stainless steel case. Topped by a **sapphire** crystal, the case has a screw-in case back and **water-resistance to 50 meters.** The **interchangeable black leather and nylon straps** secure with buckles.

(Ryan Dec., Kay at ¶4, Ex. B.)

Kay Jewelers substantially revised the text it included on its website—it did not merely repeat Bulova's advertising copy word-for-word.

In addition, contrary to its representations, Kay Jewelers also displayed the "booklet" which contains Col. Scott's identity as mission commander and likeness, in the form of an iconic photo of him on the moon with the lunar rover in the background, and the commander's stripe on his helmet and arm clearly visible.  (Ryan Dec. ISO Opposition to Bulova MSJ at ¶¶9-11, Exs. A at 110:12-112:10, 143:18-25; M-X.)  Only five people who walked on the moon—the mission commanders for Apollo 13, 14, 15, 16, and 17, wore a spacesuit with that red stripe.  (Scott Dec. ISO Opposition to Bulova MSJ at ¶9.)

Furthermore, testimony from Bulova's 30(b)(6) witness, Christopher Napolitano, puts the responsibility for publishing advertisements on downstream retailers, such as Kay Jeweler's.  According to Mr. Napolitano's testimony, Bulova did not advertise the moon

watch, but instead created "marketing assets" which downstream retailers could then choose to use in their own advertising to promote the Bulova "replica." (Ryan Dec., Kay at ¶5, Ex. C at 22:15-24:10, 27:7-28:12.)

Kay therefore made significant and actionable use of Col. Scott's name and likeness. Kay is not an "innocent retailer" but a full participant in Bulova's scheme to misappropriate Col. Scott's name and likeness.

## IV.  ARGUMENT

### A.  LEGAL STANDARD

Summary judgment is only proper where there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. Proc. 56(a). When considering a motion for summary judgment, "[t]he moving party bears the burden of showing that there is no material factual dispute.  Therefore, the court must regard as true the opposing party's evidence, if supported by affidavits or other evidentiary material." *In re NCAA Student-Athlete Name & Likeness Licensing Litig.*, 37 F. Supp. 3d 1126, 1135 (N.D. Cal. 2014) (*citing Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986); *and Eisenberg v. Ins. Co. of N. Am.*, 815 F.2d 1285, 1289 (9th Cir. 1987).

Furthermore, "the non-moving party's evidence is to be taken as true and all inferences are to be drawn in the light most favorable to the non-moving party." *Eisenberg v. Ins. Co. of N. Am.*, 815 F.2d 1285, 1289 (9th Cir. 1987) (citation omitted).

The Ninth Circuit has ruled that in certain fact-specific contexts, summary judgment is disfavored.  This includes Lanham Act claims and right of publicity claims, both of which are highly factual in nature.  *See Wendt v. Host Int'l, Inc.*, 125 F.3d 806, 812 (9th Cir. 1997).  In particular, likelihood of confusion raises factual issues that are not proper for determination on summary judgment.  "Likelihood of confusion as to endorsement is therefore a question for the jury." *Abdul-Jabbar v. GMC*, 85 F.3d 407, 413 (9th Cir. 1996), *citing White v. Samsung Elec. Am., Inc.,* 971 F.2d 1395, 1400-01 (9th Cir. 1992).

//
//

**B. DEFENDANT KAY IS NOT ENTITLED TO SUMMARY JUDGMENT**

    **1. Defendant Kay is Not Entitled to an "Innocent Retailer" Defense.**

Kay Jewelers concedes that Col. Scott's claims are quintessential "right of publicity" claims. (Kay MSJ at 5:21.) Nevertheless, Kay contends that it is not liable for any violation of Col. Scott's right to publicity, because it is an "innocent retailer." (Kay MSJ at 5:21-9:14.)

Kay is incorrect for three reasons.

*First,* Kay is not innocent, as it approved and rewrote the advertising in question, and chose to display the booklet using Col. Scott's likeness and identity in its jewelry cases. (Ryan Dec. ISO Opposition to Bulova MSJ at ¶9.d, Exs. T-U.) Furthermore, Bulova's 30(b)(6) witness testimony suggests that Kay, as a downstream retailer, had the ability to use and possibly revise without Bulova's approval. (Ryan Dec., Kay at ¶5, Ex. C at 22:15-24:10, 27:7-28:12.)

*Second,* Kay has not presented any evidence that an "innocent retailer" defense applies in right of publicity claims in the Ninth Circuit or in California. All of Kay's cases were found outside the Ninth Circuit and California, and Plaintiff was unable to locate any "innocent retailer" cases in the Ninth Circuit or California.

*Third,* Kay's innocent retailer cases are inapposite, and/or contradicted by other authority.

With regard to Kay's innocent retailer cases, all of them are readily distinguishable, and are not persuasive. Under those cases, Kay is either not an innocent retailer, or differences between the laws of those states and California laws would lead to a different result even if the same rule were applied.

In the first case Kay cites, *Brinkley v. Casablancas*, 80 A.D.2d 428 (App. Div. 1981), a case involving a downstream retailer's sale of unauthorized posters of Christie Brinkley, the court ruled that the downstream retailer's sale of the posters did not constitute an actionable misappropriation of name and likeness. However, that case is distinguishable for three independent reasons.

First, New York does not have a common law right of publicity, unlike California. *See Brinkley*, 80 A.D.2d at 431-32, 435-36.

Second, *Brinkley* is distinguishable because it pertains to a retailer "which sells a product exploiting the name, portrait or picture of a person." *Brinkley*, 80 A.D.2d at 443-44. Here, Kay was not selling a photograph of Col. Scott, it was deliberately advertising the watch using what it describes as "two words." Unfortunately for Kay, those two words were Col. Scott's name.

Third, the New York definition of "use" for the purposes of a right of publicity claim is narrower than the definition in the state of California. Under New York law, a use occurs when a "name, portrait, picture or voice is used within this state for advertising purposes or for the purposes of trade." California's definitions are broader. Under the common law right to privacy and publicity, use applies where Defendant's actions constitute "the appropriation of plaintiff's name or likeness to defendant's advantage, commercially **or otherwise."** *Maxwell v. Dolezal*, 231 Cal. App. 4th 93, 97 (Cal. Ct. App. 2014); *Eastwood v. Superior Court*, 149 Cal. App. 3d 409, 417 (Cal. Ct. App. 1983) (emphasis added). Under the statutory right to publicity, a use occurs when a defendant "knowingly uses another's name, voice, signature, photograph, or likeness, in any manner, on or in products, merchandise, or goods, or for purposes of advertising or selling, or soliciting purchases of, products, merchandise, goods or services, without such person's prior consent." Cal. Civil Code § 3344. Kay Jewelers used Col. Scott's name and likeness to its advantage (commercially or otherwise), and for the purpose of "advertising or selling, or soliciting purchase of, products, merchandise, goods or services." Kay is liable for this use, and there is no exception under Ninth Circuit law. *See also Robinson v. Snapple Bev. Corp.*, 2000 U.S.Dist.LEXIS 8534 (S.D.N.Y. 2000) (unpublished) (distinguishing *Brinkley*).

Kay also cites *Almeida v. Amazon.com, Inc.*, 456 F.3d 1316, 1326 (11th Cir. 2006), for the proposition that an alleged "innocent retailer" cannot have publicity claims brought against them. However, *Almeida* has to do with a book marketed by Amazon by simply displaying the cover of the book. As set forth in more detail in our opposition to Bulova's motion for

Plaintiff's Opposition to Kay's Motion for Summary Judgment                    17-cv-00436-NC

summary judgment, books and advertisements for books are treated differently than "merely commercial" advertisements.  For example, the language Bulova quotes from *Maloney v. T3Media, Inc.*, 853 F.3d 1004 (9th Cir. 2017), pertains to the use of a person's identity "in news reporting, commentary, entertainment, works of fiction or nonfiction, or in advertising that is incidental to such uses."  (MSJ at 10:26-11:1.)  The use in *Almeida* is a use that is incidental advertising of a work of nonfiction, namely, a book of photographs.  Here, if Bulova had written a book about Col. Scott, and Kay had merely sold it, there would be a different result.

Kay makes parenthentical reference to an article on False Advertising law and the case of *Vassiliades v. Garfinckel's, Brooks Bros.*, 492 A.2d 580, 590 (D.C. 1985) to further support its argument that it is "innocent."  (Kay MSJ at 7:23-8:2.)  However, those to examples are inapposite.  In the article, it is a publication, namely a newspaper, that is found not to be liable for advertisements.  Here, Kay posted its own advertisements—on its website, and in its stores, and it edited the text before posting it on its website.  Kay is not a newspaper.  In *Vassiliades*, a department store permitted a plastic surgeon to speak on location.  However, Kay is not providing a venue for Bulova's speech, Kay is instead speaking on its own behalf for the purpose of selling watches that Kay directly profits from.  If Plaintiff were suing facebook or instragram for Bulova's posts, this argument would apply.  But Kay is not facebook or Instagram, it is promoting and selling the moon watch itself.

Finally, Kay argues that it can find safe harbor under California Civil Code section 3344(f), which immunizes "owners or employees of any medium used for advertising."  Kay is not the owner of any "newspapers, magazines, radio and television networks and stations, cable television systems, billboards, and transit ads."  Kay is in the business of sales, and it promotes these sales in its stores and on its website, and such uses are not protected by section 3344(f).

Kay argues that it is "unduly burdened" by being forced to abide by Col. Scott's publicity rights.  But this is not so.  If Kay wishes to place advertisements in the stream of

1    commerce, it must obey the law.  The burden is not undue—it is the very purpose of

2    California's laws regarding publicity and privacy.

3          **2.   Defendant Kay is Liable Under the Lanham Act.**

4          Kay contends that it is not liable under the Lanham act, on the grounds that it had no

5    control over Bulova's actions.  (Kay MSJ at 10:1-7).  Kay cites a single second circuit case,

6    *Tiffany (NJ) Inc., v. eBay, Inc*., 600 F.3d 93 (2d. Cir. 2010), claiming that it cannot be held

7    liable for Bulova's copywriting, just as eBay cannot be held liable for counterfeit Tiffany

8    Jewelry.

9          However, unlike in eBay, Kay had the option (which it took) of editing the copy that

10   Bulova provided.  Furthermore, eBay is distinguishable because unlike Kay, it does not ever

11   take possession of the product that is alleged to have been falsely described.  Furthermore, as

12   Kay admits in a footnote, the court in *Tiffany* remanded the false advertising claim against

13   eBay because eBay's conduct in advertising the fact that Tiffany jewelry was sold on eBay

14   may have implied that the Tiffany goods sold on eBay were genuine.  (Kay MSJ at 10 n.4.)

15   Here, Kay Jewelers used Col. Scott's name, displayed the booklet and all the false statements

16   therein, and Col. Scott has presented expert testimony that this use created an association

17   between Col. Scott and the Bulova "replica."  Kay was a full and willing participant in this

18   matter, and as a result, obtained profits beyond those obtained by Bulova.  Col. Scott is entitled

19   to bring a cause of action under state and federal law to reclaim those ill-gotten gains.

20         **3.   Defendant Kay's Contract with Bulova Does Not Abrogate Col. Scott's Rights.**

21         Finally, Kay argues that because Bulova is responsible for ensuring that marketing

22   materials for the Bulova "replica" comply with the law, Kay Jewelers cannot be liable for

23   Bulova's actions in promoting the moon watch, even where, as here, Kay Jewelers participated

24   in those actions.  (Kay MSJ at 4:2-18.)  However, this is incorrect as a matter of law.  Col.

25   Scott is not a party to the contract between Kay Jewelers and Bulova, and it is axiomatic that a

26   contract between two parties does not abrogate the rights of a stranger to that contract.  "It goes

27   without saying that a contract cannot bind a nonparty."  *EEOC v. Waffle House, Inc.*, 534 U.S.

28   279, 294 (2002).

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**V.   CONCLUSION**

Plaintiff has provided adequate evidence and/or legal argument to support all of the claims raised by Kay on summary judgment.  Summary judgment should therefore be denied, as there are genuine disputes of fact and law with regard to all eight remaining causes of action.

DATED:  December 28, 2017                    MEZZETTI LAW FIRM, INC.


 __/s/ Robert L. Mezzetti, II_____
 ROBERT L. MEZZETTI, II


**CERTIFICATION**

I, Robert L. Mezzetti, II, am the ECF user whose ID and password are being used to file this Stipulation in compliance with Local Rule 5-1(i)(3).  I hereby attest that the concurrence of the filing of this document has been obtained from each of the other signatories indicated by a conformed signature (/s/) within this document.

DATED:  December 28, 2017                    By: __/s/ Robert L. Mezzetti, II_____
 ROBERT L. MEZZETTI, II

Plaintiff's Opposition to Kay's Motion for Summary Judgment                    17-cv-00436-NC